1

2

3

4

5

6

7

8                                     UNITED STATES DISTRICT COURT

9                                     EASTERN DISTRICT OF CALIFORNIA

10

11  KEVIN HUGHEY and JESSICA              No.  2: 13-cv-2665-TLN-AC
    HUGHEY, individually on behalf of
12  themselves and on behalf of minor child
    GRAHAM HUGHEY,
13                                          **MEMORANDUM AND ORDER**
                    Plaintiffs,
14
         v.
15
    ARTURO CAMACHO, DAN
16  DRUMMOND, THOMAS MCDONALD,
    WEST SACRAMENTO POLICE
17  DEPARTMENT, CITY OF WEST
    SACRAMENTO, TOD SOCKMAN,
18  JASON WINGER, LABIN WILSON,
    TYLER RAINEY, ANDREA DONAHUE,
19  CODY COULTER, CHRIS RICE, MATT
    BOUDINOT, RICH BENTLEY, and
20  DOES 1–20,

21                  Defendants.

22

23          This matter is before the Court pursuant to Defendant Camacho's, Drummond's,

24  McDonald's, Sockman's, Winger's, Wilson's, Rainey's, Donahue's, Coulter's, Rice's,

25  Boudinot's, Bentley's, West Sacramento Police Department's, and City of West Sacramento's

26  (collectively "Defendants")   motion to dismiss Plaintiffs Kevin Hughey's ("Mr. Hughey"),

27  Jessica Hughey's ("Mrs. Hughey"), and Graham Hughey's (collectively "Plaintiffs") complaint.

28

                                                  1

(ECF Nos. 1, 17.)  For the reasons stated below, the motion to dismiss is hereby GRANTED in part and DENIED in part, with leave for Plaintiffs to amend.

## I.      Factual Allegations

This case derives in part from the facts alleged in a different lawsuit pending before this Court, *Hughey v. Drummond et al.*, 2:14-cv-37-TLN (complaint filed on January 7, 2014).  In that case, Plaintiffs (Mr. and Mrs. Hughey) alleged that Mr. Hughey was the victim of an unprovoked police shooting on July 9, 2012.  Plaintiffs alleged that Defendants in that case (officers and others associated with the West Sacramento Police Department) conspired to fabricate evidence and to conceal the unlawfulness of the shooting.

In the instant complaint, the factual allegations are as follows.[1]  On November 9, 2013, at about 8:50 PM, Mr. Hughey slipped and fell down the stairs in his home.  Following the fall, Mrs. Hughey observed Mr. Hughey sitting awkwardly and without any clothes on at the base of stairs. He was disoriented and bleeding profusely from his head.  At about 8:54 PM, Mrs. Hughey called 9-1-1, reported the accident, and requested that paramedics be dispatched to her home.  The 9-1-1 operator stayed on the phone with Mrs. Hughey until the paramedics arrived about 5 minutes later.  At that point, the operator informed Mrs. Hughey that the paramedics were in the rear alley and she should open the door to let them in.  Mrs. Hughey hung up the phone and let the paramedics into her home through the rear garage entrance.  (ECF No. 1 ¶¶ 14–19.)

Mr. Hughey declined medical treatment from the paramedics and asked that they leave. The paramedics left through the rear garage entrance and reported to the 9-1-1 operator that Mr. Hughey was an "uncooperative patient."  Officer Camacho then advised dispatch that an officer-involved shooting had occurred at this location (the July 9, 2012 shooting that is the subject of the 2:14-cv-37 case).  Within a few minutes, WSPD dispatched eight armed officers (Defendants Camacho, Winger, Wilson, Rainey, Donahue, Coulter, Rice, and Boudinot) to Plaintiffs' residence.[2]  Initially, the officers were informed that Plaintiffs were hostile and had aggressive

---

[1] The factual allegations in this section are taken from the complaint.  For the purposes of a motion to dismiss, the factual allegations in the complaint are accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

[2] Plaintiffs assert that WSPD had twelve officers on shift patrol, in total, at the time the eight officers were dispatched.

1    dogs, but they were subsequently told by the paramedics (apparently upon the officers' arrival at

2    the residence) that Mr. Hughey was not physically combative and that he had only been

3    aggressive in asking the paramedics to leave.  The WSPD also performed a check for criminal

4    conduct on Mr. Hughey, and discovered no criminal convictions associated with Mr. Hughey or

5    the residence.  (ECF No. 1 ¶¶ 19–23.)

6         At approximately 9:12 PM, the 9-1-1 operator called Mrs. Hughey and asked if she would

7    be willing to come outside to talk to one of the officers.  Mrs. Hughey was hesitant because of the

8    shooting that had occurred on July 9, 2012.  The operator persisted, and eventually Mrs. Hughey

9    opened her front door while holding her infant son, Graham Hughey.  At that point, the officers

10   shined their flashlights in her eyes and demanded that she step outside.  Some of the officers had

11   tasers and guns drawn.  Mrs. Hughey was escorted away from her front door.  The officers

12   shouted at Mrs. Hughey, asking if there were weapons in the home, and she responded that there

13   were no weapons.  Mrs. Hughey asked if she could return home to tend to her injured husband.

14   The officers responded that she could not.  Mrs. Hughey attempted to return inside and the

15   officers prevented her from doing so.  One of the officers informed her that they were present to

16   protect the paramedics, although the paramedics were in the rear alley at the time.  (ECF No. 1 ¶¶

17   23–31.)

18        At approximately 9:15 PM, Mr. Hughey came outside wearing only a pair of shorts.  The

19   officers raised their guns and tasers and surrounded him.  Mrs. Hughey then rushed in between

20   the officers and Mr. Hughey, and shouted at Mr. Hughey that he should return inside for his

21   safety.  Mrs. Hughey returned inside and attempted to pull her husband in by the arm but he

22   remained outside.  Eventually, Mrs. Hughey opened the rear garage door to seek assistance from

23   the paramedics, observed two WSPD officers standing there, and requested that the paramedics

24   proceed to the front of the home to assist Mr. Hughey.  The paramedics attempted to proceed

25   around the house to contact Mr. Hughey but WSPD officers prevented them from doing so.  Mrs.

26   Hughey grabbed Mr. Hughey and pushed him into the house.  A few minutes later, all WSPD

27   officers left.  (ECF No. 1 ¶¶ 31–49.)

28

3

At some point during the encounter, Mr. Hughey was classified by WSPD either as requiring unconsenting medical aid or as having a mental disorder that would permit WSPD to seize and confine him without consent.  WSPD also initiated a DMV query on the family vehicle. (ECF No. 1 ¶¶ 41, 42.)

Mr. Hughey eventually went to UC Davis Medical Center and was diagnosed with a fractured left elbow that required surgery, a fractured wrist, a broken nose, a concussion, cracked ribs, and several contusions.  (ECF No. 1 ¶ 62.)

Officer Wilson later provided a written statement of the events.  That statement did not include details of the threats the officers made to Plaintiffs during the encounter, or details that would evidence the lack of a need for the level of force used by the officers.  None of the eight officers activated their audio devices during the encounter.  (ECF No. 1 ¶ 50.)

**II.      Procedural History**

On December 30, 2013, Plaintiffs filed the complaint.  (ECF No. 1.)  On February 25, 2014, Defendants filed a motion to dismiss the complaint.  (ECF No. 17.)  Plaintiffs subsequently filed an opposition to the motion to dismiss, and Defendants filed a reply to that opposition. (ECF Nos. 22, 24.)

**III.     Standard Of Review**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## IV.    Analysis

The complaint alleges 16 causes of action, including state law torts and federal constitutional violations. Defendants move to dismiss Plaintiffs' complaint in full on the basis that it does not specifically state which causes of action are alleged against which defendant and which facts support each legal theory (i.e. "shotgun" pleading) and hence does not comport with Fed. R. Civ. Pro. pleading requirements. (ECF No. 17-1 at 4–6.) On separate grounds, Defendants also move to dismiss claims 3, 8, 11, 13, 14, 15, and 16. The Court finds that the complaint warrants dismissal based on Defendants' arguments regarding shotgun pleading. For clarity going forward, the Court also addresses the other arguments for dismissal.

A. "Shotgun" pleading

Defendants move to dismiss Plaintiffs' complaint in full because Plaintiffs fail to state which causes of action are alleged against which Defendants and which facts support each legal theory.  Defendants assert that, as a practical matter, they cannot identify which immunities or defenses apply to individual defendants.  (ECF No. 17-1 at 5.)  Plaintiffs respond that the Rule 8 standard does not require the precise delineation of facts and individual defendants that Defendants request.  (ECF No. 22 at 5–8.)

Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim.  *See In re Mortgages Ltd.*, No. 2013 WL 1336830, at *12 (Bankr. D. Ariz. March 29, 2013); *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  The instant complaint does both of these things, and hence violates Fed R. Civ. Pro. 10, requiring that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and Fed. R. Civ. Pro. 8, requiring that the complaint contain a "short and plain statement" of the entitlement to relief.  The complaint does not specify which Defendants are implicated for each of the 16 claims.  Some of the named Defendants do not appear in the factual allegations.  The complaint also incorporates by reference the 62 paragraphs of factual allegations that precede the claims, without designating which facts underlie which claim.  Given the number of Defendants and the number of claims, Defendants cannot adequately prepare a defense without knowing which Defendant faces which allegations.  Amending the complaint to rectify this deficiency will facilitate the pleading process, going forward.  Therefore the complaint is dismissed with leave to amend.

B. Claims 11, 13, 14, 15, and 16

In their opposition to the motion to dismiss, Plaintiffs concede dismissal of claim 11 (alleging a violation of 42 U.S.C. § 1141), and claim 15 (alleging a violation of 42 U.S.C. § 1985).  Thus, claims 11 and 15 are dismissed with prejudice.  Claim 16 (alleging a violation of 42 U.S.C. § 1986) is viable only if a claim under 42 U.S.C. § 1985 is viable.  *See* 42 U.S.C. § 1986

("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed … shall be liable …."). Because Plaintiffs concede dismissal of their § 1985 claim, claim 16 is also dismissed with prejudice.

Claim 13 alleges spoliation and fabrication of evidence.  Plaintiffs concede there is no basis in state law for this claim.  *See Cedars-Sinai Medical Center v. Superior Court* 18 Cal. 4th 1, 17–18 (1998) (holding that "there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which, as here, the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action.")  This claim is dismissed with prejudice to the extent it relies upon state law.[3]

Plaintiffs concede dismissal of claim 14 (alleging a violation of 42 U.S.C. § 1983 on multiple grounds) to the extent it relies upon the cruel and unusual punishment clause of the 8th Amendment.  As an Eight Amendment claim applies only to convicted prisoners, claim 14 is dismissed with prejudice to the extent it relies upon the Eight Amendment.  *See Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (citing *Whitley v. Albers*, 475 U.S. 312, 318–326 (1986)). Otherwise, this claim is preserved, but dismissed with leave to amend on the basis of the Court's disposition regarding shotgun pleading.

C. <u>Claim 3: Gross Recklessness</u>

Claim 3 alleges "gross recklessness," which the Court construes as a claim for gross negligence.  Defendants move to dismiss on the basis that there is no independent tort of gross negligence.

California courts have disclaimed a cause of action for "gross negligence" as independent of a tort for ordinary negligence.  *See Continental Ins. Co. v. American Protection Industries*, 197 Cal. App. 3d 322, 329 (1987) ("Do Our Courts Recognize a Cause of Action for "Gross

---

[3] Plaintiffs should clarify in an amended complaint whether they still wish to pursue this claim on federal grounds, and which cause of action this claim falls under.  Additionally, Plaintiffs request that the Court not restrict discovery rights with respect to this issue.  The Court finds no reason to so restrict discovery at this time.

Negligence"? No."); *Rosencrans v. Dover Images*, 192 Cal. App. 4th 1072, 1088 (2011); *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 780 (2007).  In their opposition, Plaintiffs reference a number of California statutes that provide liability only upon a showing of gross negligence.  (ECF No. 22 at 8.)  *See e.g.* Cal. Bus. & Prof. Code § 2935.5 (immunity not available when on-call licensees committed gross negligence in providing emergency care in emergency rooms); Cal. Bus. & Prof. Code § 2398 (immunity not available when a licensee commits gross negligence in rendering voluntary emergency medical assistance during a community college or high school sporting event); Cal. Health & Safety Code § 1799.106 (a police officer "who renders emergency medical services at the scene of an emergency … shall only be liable in civil damages for acts or omissions performed in a grossly negligent manner…").  Plaintiffs do not plead causes of action under these statutes.  Were they applicable to the facts here, they permit Plaintiff to show liability under the statute when gross negligence is required.  However, Plaintiffs plead ordinary negligence (claim 2), in addition to negligent affliction of emotional distress (claim 5), negligent supervision (claim 9), and negligent entrustment (claim 10).  Plaintiffs can allege facts that show heightened negligence, without maintaining a separate cause of action for gross negligence.  *See Continental Ins.* 197 Cal. App. at 330 (observing that "since … the doctrine of comparative negligence, the need for categorization of misconduct into degrees has been radically diminished."); *Sorensen v. Allred*, 112 Cal. App. 3d 717, 725 (1980) ("In summary, we conclude that no defensible reason exists for categorizing willful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. … We apply an old axiom, 'when the need for a rule ceases the rule ceases.'").  This claim is dismissed, with leave to amend if Plaintiffs can show that an independent claim for gross negligence is required for relief that would not be covered by their claims for ordinary negligence.

D.  Claim 8: Trespass

Plaintiffs allege trespass in claim 8.  Defendants move to dismiss on the grounds that 1) the officers had an implied license to enter the property, and 2) Plaintiffs' 9-1-1 call constituted consent for officers to enter, thus negating their status as trespassers.  (ECF No. 17-1 at 6–7.)

Defendants cite to Justice Alito's dissenting opinion in *Florida v. Jardines*, 133 S. Ct. 1409, 1423 (2013), for the argument that officers generally have an implied license to approach a person's front door and talk to occupants.  In that case, the Supreme Court (majority decision) held that the customary invitation of homeowners allowing visitors to approach a home and knock on the front door did not constitute an implied license for police officers to enter the home's curtilage with drug-sniffing dogs, after receiving an unverified tip, to investigate a potential marijuana grow operation.  *Id.* at 1415–16.  The *Jardines* Court emphasized that the scope of a license, whether express or implied, was limited "not only to a particular area, but also to a specific purpose." *Id.* at 1416.  Construing the material facts in favor of Plaintiffs, it is plausible that Defendant officers did not have a license to enter the curtilage of Plaintiff's home, draw their weapons, engage in harassing behavior, or otherwise perform acts that were not for the specific purpose of responding to an emergency call.

Defendants also cite *Williams v. General Electric Credit Corp.*, 159 Cal. App. 2d 527 (2d Dist. 1958) to support their contention regarding consent.  In that case, the court found that when the plaintiff purchased a television set on a monthly installment plan, she consented to defendant's entry into her home to repossess the television when she defaulted on payments, but only so far as was necessary to accomplish that purpose.  *Id.* at 532-33.  Consent is determined under the totality of the circumstances.  *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).  Someone who initially has consent to enter may become a trespasser if he or she proceeds to abuse the privilege given by consent.  *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1780 (1993).  Plaintiffs' theory of trespass can be predicated on a variety of factual specifics, e.g. whether they consented to paramedics entering their property but not police officers, or whether Plaintiffs withdrew consent by refusing police assistance after officers arrived.  Drawing all material facts in favor of Plaintiffs, it is plausible that consent was not present.

However, as previously stated, this claim is dismissed with leave to amend on the basis of the Court's disposition regarding shotgun pleading.

9

### V.   Conclusion

- The complaint is dismissed in full with leave to amend.  Going forward, Plaintiffs are directed to designate the specific facts that underlie each claim and the Defendant(s) to which a claim is directed.

- Claim 3 is also dismissed with leave to amend on the grounds that Plaintiffs do not demonstrate precedent for an independent tort of gross negligence.

- Claims 11, 15, and 16 are dismissed with prejudice.

- Claim 13 is dismissed with prejudice to the extent it is predicated on state law.

- Claim 14 is dismissed with prejudice to the extent it relies upon the cruel and unusual punishment clause of the 8th amendment.

- Plaintiffs shall file and serve an amended complaint within 14 days of entry of this order.

- Defendants shall file a responsive pleading within 21 days of service of the amended complaint.

Dated:  October 22, 2014

Troy L. Nunley
United States District Judge