1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN HUGHEY and JESSICA              No.  2:13-cv-02665-TLN-AC
     HUGHEY, individually on behalf of
12   themselves and on behalf of minor child
     GRAHAM HUGHEY,
13                                          **ORDER GRANTING DEFENDANT TOD
                Plaintiffs,                 SOCKMAN'S MOTION TO DISMISS
14                                          PLAINTIFFS' SECOND AMENDED
          v.                                COMPLAINT**
15
     ARTURO CAMACHO, DAN
16   DRUMMOND, THOMAS MCDONALD,
     WEST SACRAMENTO POLICE
17   DEPARTMENT, CITY OF WEST
     SACRAMENTO, TOD SOCKMAN,
18   JASON WINGER, LABIN WILSON,
     TYLER RAINEY, ANDREA DONAHUE,
19   CODY COULTER, CHRIS RICE, MATT
     BOUDINOT, RICH BENTLEY, and
20   DOES 1-20,

21             Defendants.

22

23        This matter is before the Court pursuant to Defendant Tod Sockman's Motion to Dismiss

24   Plaintiffs Kevin Hughey, Jessica Hughey and Graham Hughey's (collectively "Plaintiffs")

25   Second Amended Complaint.  (ECF No. 43.)  Plaintiffs filed an opposition to Defendant

26   Sockman's Motion to Dismiss.  (ECF No. 48.)  Defendant Sockman filed a reply to Plaintiffs'

27   opposition.  (ECF No. 49.)  For the reasons stated below, Defendant Sockman's Motion to

28   Dismiss (ECF No. 43) is hereby GRANTED.

                                             1

1    I.      **FACTUAL AND PROCEDURAL BACKGROUND**

2           This case derives in part from the facts alleged in a different lawsuit pending before this

3    Court, *Hughey v. Drummond et al.*, 2:14-cv-00037-TLN-AC (complaint filed on January 7,

4    2014).[1]  In that case, Plaintiffs (Mr. and Mrs. Hughey) alleged that Mr. Hughey was the victim of

5    an unprovoked police shooting on July 9, 2012.  Plaintiffs alleged that Defendants in that case

6    (officers and others associated with the West Sacramento Police Department) conspired to

7    fabricate evidence and to conceal the unlawfulness of the shooting.

8           In the instant complaint, the factual allegations are as follows.  On November 9, 2013, at

9    about 8:50 p.m., Mr. Hughey slipped and fell down the stairs in his home.  Following the fall,

10   Mrs. Hughey observed Mr. Hughey sitting awkwardly and without any clothes on at the base of

11   stairs. He was disoriented and bleeding profusely from his head.  At about 8:54 p.m., Mrs.

12   Hughey called 9-1-1, reported the accident, and requested that paramedics be dispatched to her

13   home.  The 9-1-1 operator stayed on the phone with Mrs. Hughey until the paramedics arrived

14   about 5 minutes later.  At that point, the operator informed Mrs. Hughey that the paramedics were

15   in the rear alley and she should open the door to let them in.  Mrs. Hughey hung up the phone and

16   let the paramedics into her home through the rear garage entrance.  (Sec. Amend. Compl., ECF

17   No. 38 ¶¶ 14–18.)

18          Mr. Hughey declined medical treatment from the paramedics and asked that they leave.

19   The paramedics left through the rear garage entrance and reported to the 9-1-1 operator that Mr.

20   Hughey was an "uncooperative patient."  Officer Camacho then advised dispatch that an officer-

21   involved shooting had occurred at this location (the July 9, 2012 shooting that is the subject of the

22   2:14-cv-37 case).  Within a few minutes, WSPD dispatched eight armed officers (Defendants

23   Camacho, Winger, Wilson, Rainey, Donahue, Coulter, Rice, and Boudinot) to Plaintiffs'

24   residence.[2]  Initially, the officers were informed that Plaintiffs were hostile and had aggressive

25   dogs. The officers were subsequently told by the paramedics that Mr. Hughey was not physically

26   ---
[1] The remaining factual allegations in this section are taken from the Court's previous order. For the purposes of a
27   motion to dismiss, the factual allegations in the complaint are accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
     (1972).
     [2] Plaintiffs assert that WSPD had twelve officers on shift patrol, in total, at the time the eight officers were
28   dispatched.

1  combative and that he had only been aggressive in asking the paramedics to leave.  The WSPD

2  also performed a check for criminal conduct on Mr. Hughey, and discovered no criminal

3  convictions associated with Mr. Hughey or the residence.  (ECF No. 38 ¶¶ 19–23.)

4         At approximately 9:12 p.m., the 9-1-1 operator called Mrs. Hughey and asked if she

5  would be willing to come outside to talk to one of the officers.  Mrs. Hughey was hesitant,

6  because of the shooting that had occurred on July 9, 2012.  The operator persisted, and eventually

7  Mrs. Hughey opened her front door while holding her infant son, Graham Hughey.  At that point,

8  the officers shined their flashlights in her eyes and demanded that she step outside.  Some of the

9  officers had tasers and guns drawn.  Mrs. Hughey was escorted away from her front door.  The

10  officers shouted at Mrs. Hughey, asking if there were weapons in the home, and she responded

11  that there were no weapons.  Mrs. Hughey asked if she could return home to tend to her injured

12  husband.  The officers responded that she could not.  Mrs. Hughey attempted to return inside and

13  the officers prevented her from doing so.  One of the officers informed her that they were present

14  to protect the paramedics, although the paramedics were in the rear alley at the time.  (ECF No.

15  38 ¶¶ 24–32.)

16         At approximately 9:15 p.m., Mr. Hughey came outside, wearing only a pair of shorts.  The

17  officers raised their guns and tasers and surrounded him.  Mrs. Hughey then rushed between the

18  officers and Mr. Hughey, and shouted at Mr. Hughey that he should return inside for his safety.

19  Mrs. Hughey returned inside and attempted to pull her husband in by the arm, but he remained

20  outside.  Eventually, Mrs. Hughey opened the rear garage door to seek assistance from the

21  paramedics, observed two WSPD officers standing there, and requested that the paramedics

22  proceed to the front of the home to assist Mr. Hughey.  The paramedics attempted to proceed

23  around the house to contact Mr. Hughey, but WSPD officers prevented them from doing so.  Mrs.

24  Hughey grabbed Mr. Hughey and pushed him into the house.  A few minutes later, all WSPD

25  officers left.  (ECF No. 38 ¶¶ 33–49.)

26         At some point during the encounter, Mr. Hughey was classified by WSPD either as

27  requiring unconsenting medical aid or as having a mental disorder that would permit WSPD to

28  seize and confine him without consent.  WSPD also initiated a DMV query on the family vehicle.

1  (ECF No. 38 ¶¶ 41, 42.)

2       Mr. Hughey later went to the UC Davis Medical Center and was diagnosed with a

3  fractured left elbow that required surgery, a fractured wrist, a broken nose, a concussion, cracked

4  ribs, and several contusions.  (ECF No. 38 ¶ 62.)

5       Officer Wilson later provided a written statement of the events.  That statement did not

6  include details of the threats the officers made to Plaintiffs during the encounter or details that

7  would evidence the lack of a need for the level of force used by the officers.  None of the eight

8  officers activated their audio devices during the encounter.  (ECF No. 38 ¶ 50.)

9       Plaintiffs filed the instant action on December 30, 2013.  (ECF No. 1.)  Defendants

10  collectively filed two previous motions to dismiss.  (ECF Nos. 17, 30.)  In the Court's first order

11  granting in part and denying in part Defendants' motion to dismiss, the Court required Plaintiffs

12  to name Defendants against whom each cause of action was asserted.  (ECF No. 28 at 6.)  The

13  Court's last order narrowed Plaintiffs' complaint to eight causes of action.  (ECF No. 37 at 16–

14  17.)  Plaintiffs filed their Second Amended Complaint on September 28, 2015.  (ECF No. 38.)

15  **II.      STANDARD OF REVIEW**

16       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

17  12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

18  2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

19  statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

20  U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

21  defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

22  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

23  pleading standard relies on liberal discovery rules and summary judgment motions to define

24  disputed facts and issues and to dispose of unmeritorious claims*." Swierkiewicz v. Sorema N.A.*,

25  534 U.S. 506, 512 (2002).

26       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

27  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

28  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

1    *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3    relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

4    factual content that allows the court to draw the reasonable inference that the defendant is liable

5    for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

6          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

7    factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

8    1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

9    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

10   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

11   elements of a cause of action." *Twombly*, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678

12   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

14   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

15   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

16   459 U.S. 519, 526 (1983).

17         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

19   *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

20   the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680.  While

21   the plausibility requirement is not akin to a probability requirement, it demands more than "a

22   sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a

23   context-specific task that requires the reviewing court to draw on its judicial experience and

24   common sense." *Id.* at 679.

25         In ruling upon a motion to dismiss, the court may consider only the complaint, any

26   exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

27   Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

28   *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

1    1998).

2          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

3    amend even if no request to amend the pleading was made, unless it determines that the pleading

4    could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

5    1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

6    *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

7    denying leave to amend when amendment would be futile).  Although a district court should

8    freely give leave to amend when justice so requires under Federal Rule of Civil Procedure

9    15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has

10   previously amended its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713

11   F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th

12   Cir. 2004)).

13   **III.    ANALYSIS**

14         Defendant Sockman asserts that Plaintiffs do not allege any facts against him and do not

15   identify Defendant as a named party in any of the eight causes of action.  (ECF No. 43 at 2.)

16   Plaintiffs contend that Defendant's name was inadvertently omitted from the eighth cause of

17   action brought under 42 U.S.C. § 1983.  (ECF No. 48 at 5.)  Plaintiffs further claim Defendant

18   Sockman is personally liable because he failed to properly supervise the officers involved in the

19   incident.  (ECF No. 48 at 5.)  Defendant Sockman counters that Plaintiffs fail to allege facts

20   demonstrating Defendant did not properly supervise the officers.  (ECF No. 49 at 4.)

21         This Court previously granted Plaintiffs leave to amend in order to identify "which

22   Defendant faces which allegations."  (ECF No. 28 at 6.)  In so ordering, the Court noted Plaintiffs

23   used shotgun pleading and did not "identif[y] which party did what specifically."  *Magulta v.*

24   *Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (holding claims alleged generally against fourteen

25   defendants were insufficient).  Plaintiffs corrected this deficiency in their First and Second

26   Amended Complaints, but failed to name Defendant Sockman in any of the eight causes of action.

27   Without naming Defendant Sockman in a cause of action, Plaintiff fails to state a claim upon

28   which relief may be granted.

6

1    Assuming Plaintiffs had named Defendant Sockman in the eighth cause of action,

2    Plaintiffs fail to assert sufficient facts to state a § 1983 claim against him.  Plaintiffs allege

3    Defendant Sockman is an individual employed by and acting as an agent of WSPD.  (ECF No. 38

4    ¶ 6.)  Plaintiffs further allege Defendant Sockman is a WSPD supervisor and official.  (ECF No.

5    38 ¶ 20.)  According to Plaintiffs "supervisors and officials willfully and intentionally suppressed

6    and withheld prior history regarding WSPD wrongdoing and failed to update and advise

7    personnel accordingly."  (ECF No. 38 ¶ 20.)  Additionally, "[s]upervisors in WSPD sign off on

8    reports as being acceptable despite personnel's failure to abide by policies that mandate the use of

9    audio recording devices."  (ECF No. 38 ¶ 55.)

10    A supervisor in a § 1983 action must have "(1) personal involvement in the constitutional

11    deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

12    the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Supervisors

13    may also be liable if he "knew of the violations and failed to act to prevent them." *Taylor v. List*,

14    880 F.2d 1040, 1045 (9th Cir. 1989).  Other than the above listed facts, the Court cannot find

15    other references to Defendant Sockman that would suggest he is liable as a supervisor for the

16    events outlined in the second Amended Complaint.   In fact, there are no other references to

17    Defendant Sockman at all.  Absent facts establishing a theory of supervisor liability, Plaintiffs

18    cannot plausibly assert a claim against Defendant Sockman.

19    Accordingly, Defendant Sockman's Motion to Dismiss (ECF No. 43) is hereby

20    GRANTED with leave to amend to name Defendant Sockman in the eighth cause of action and

21    include facts demonstrating Defendant Sockman's liability as a supervisor.  Plaintiffs are granted

22    thirty (30) days from the entry of this Order to file an amended complaint consistent with the

23    Court's instant order.  Plaintiffs are not permitted to amend the complaint beyond the confines of

24    this order.

25    IT IS SO ORDERED.

26    Dated: September 28, 2016

27

28
                                                              Troy L. Nunley
                                                              United States District Judge

7